# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| LYNN HOVIND, | Civil No. 08-597 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS** |
| BRISTOL PLACE CORPORATION and BRISTOL PLACE HOME HEALTH SERVICES, INC., | |
| Defendants. | |

Lisa C. Stratton, Supervising Attorney, Ashley Davis-Alteri and Amy Urberg, Certified Student Attorneys, **WORKERS RIGHTS CLINIC, UNIVERSITY OF MINNESOTA LAW SCHOOL**, 190 Mondale Hall, 229 19th Avenue South, Minneapolis, MN 55455, for plaintiff.

Konstandinos Nicklow, **MESHBESHER & SPENCE, LTD**, 1616 Park Avenue South, Minneapolis, MN 55404, for defendants.

Lynn Hovind was terminated from her job with Bristol Place Corporation and Bristol Place Home Health Services, Inc. ("BPC/BPHHS") shortly after requesting 17 days of medical leave. Hovind subsequently brought this action alleging retaliation and interference in violation of the Family Medical Leave Act ("FMLA") and breach of contract. BPC/BPHHS now moves for dismissal of Hovind's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons given below, the Court denies BPC/BPHHS's motion.

## BACKGROUND

Hovind was employed by BPC/BPHHS as a home health aide from June 2001 until her termination on March 3, 2006.[1]  (Am. Compl. ¶11.)  At all times relevant to this action, Barbara Needham was Hovind's immediate supervisor, and Pamela Richey was the BPHHS Program Director.  (Am. Compl. ¶¶22-23.)

After beginning her employment, Hovind signed a BPHHS document entitled "Bristol Place Home Health Services Work Rules."  That document includes the following sections[2]:

**ADEQUATE NOTICE FOR ILLNESS**

All agency employees are required to provide the Program Director with adequate notice if they become too ill to work their scheduled shift.

1) Staff scheduled to begin work must notify a Program Director or the supervising nurse 4 hours before arrival is scheduled (wherever possible).

2) Staff scheduled prior to 12 p.m. (noon) must contact the Supervising nurse at their home at 7:00 a.m.

3) In case of emergency, or when it is impossible to give the above notice, an explanation must be given to the Program Director or supervising nurse.

---

[1] Hovind's amended complaint includes a series of facts describing the corporate status and relationship of BPC and BPHHS.  However, the only facets of this background that are relevant to Hovind's motion are not disputed.  Those facts are that Hovind was jointly employed by BPC/BPHHS; that BPC and BPHHS qualify as "employers" for the purposes of the FMLA; and that Hovind qualifies as an "employee" for the purposes of the FMLA.

[2] The BPHHS document was quoted extensively throughout the complaint and is therefore properly considered in the context of BPC/BPHHS's motion to dismiss.  *See Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (permitting consideration of materials "necessarily embraced" by the complaint for the purposes of a Rule 12(b)(6) motion to dismiss).

  4)  If no explanation is given, it will be automatically considered unexcused.

**PROCEDURE**

  a)  All calls for illness are to be made to the Supervising Nurse.

  b)  The Supervising nurse taking the call is required to notify the Program Director of the name, date, time and reason for the absence.

* * *

**UNEXCUSED ABSENCE**

Unexcused Absences-Unexcused leave is described as absence from work without approval of the employee's direct supervisor. (Examples: not reporting for work and not calling in; walking off the job without notice; and not returning to work following vacation leave). Unexcused absences are treated in the following manner:

- First occurrence – Verbal warning (if the excuse is valid).
- Second occurrence – 3 day's suspension without pay (next 3 days scheduled)
- Third occurrence – Termination

(Nicklow Aff. Ex. D at 1-2.)

On March 2, 2006, Hovind verbally informed Needham that she was ill and needed a medical leave of absence. (Am. Compl. ¶26.). Specifically, Hovind requested 17 days of medical leave from Needham. (Am. Compl. ¶25.). Needham indicated that Hovind should take the leave of absence and told her that she should make a written request for leave the following day, in lieu of reporting for work. (Am. Compl. ¶26.)

On March 3, 2006, Hovind went to the BPHHS office and submitted a written request for medical leave. (Am. Compl. ¶30.) Hovind used the form designated by BPC/BPHHS for requesting leave, and left her request on the desks of Needham, Richey,

and a BPC/BPHHS secretary. (Am. Compl. ¶¶31-33.) This written request included the following information: a request for "sick leave" (as selected between "vacation," "sick leave," "personal pref.," "comp time," and "unpaid leave"); the beginning date of her request (March 3, 2006); the number of days requested (17); and a note from Hovind indicating that the request was for "medical reasons leave of absence." (Am. Compl. ¶¶34.) Hovind does not allege that she provided further details about her condition.

On March 3, 2006, the day that Hovind submitted her request, BPC/BPHHS terminated Hovind. (Am. Compl. ¶36.) Hovind was notified of this action in a phone call from Richey. (Am. Compl. ¶37.) Richey did not inquire as to why she was requesting medical leave and BPC/BPHHS did not otherwise investigate her condition. (Am. Compl. ¶26.). BPC/BPHHS also did not request that Hovind supply medical certification of her need for leave, as was its right under the FMLA. *See* 29 C.F.R. § 825.302(c). (Am. Compl. ¶46.)

The purpose for Hovind's leave request was bronchitis. (Am. Compl. ¶40.) Hovind was treated for this condition by a health care provider on March 8, 2006, and was prescribed medication. (Am. Compl. ¶41.) Hovind returned to her health care provider's office on March 9, 2006. (Am. Compl. ¶42.) Hovind had become lightheaded and needed assistance getting to the doctor's office. (Am. Compl. ¶42.) Hovind was treated on this visit for an allergic reaction to the medication prescribed to treat her bronchitis. (Am. Compl. ¶42.) Hovind also suffered from diarrhea and hives as a result of the allergic reaction. (Am. Compl. ¶42.)

Hovind alleges that she was incapacitated and unable to work for 15 consecutive calendar days following her leave request, due to her bronchitis and her allergic reaction to the medication. (Am. Compl. ¶43.) Hovind was ready to return to work on March 18, 2006. (Am. Compl. ¶44.)

Hovind filed this action on February 29, 2008, alleging that BPC/BPHHS interfered with her exercise of FMLA rights; retaliated against her for requesting leave under the FMLA; and breached her employment contract by violating the "Bristol Place Home Health Services Work Rules" quoted above. BPC/BPHHS now moves to dismiss Hovind's amended complaint pursuant to Rule 12(b)(6).

## ANALYSIS

**I.    STANDARD OF REVIEW**

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must state "a claim to relief that is plausible on its face." *Id*. at 1974.

## II.     FMLA INTERFERENCE

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for any of several reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of this right. 29 U.S.C. § 2615(a)(1). FMLA regulations require employees to provide adequate notice to their employers of the need to take FMLA leave. *See* 29 C.F.R. § 825.302-03; *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997).

Here, Hovind contends that BPC/BPHHS interfered with her exercise of FMLA rights by terminating her immediately after she requested sick leave. BPC/BPHHS moves to dismiss that claim on two grounds. First, BPC/BPHHS argues that Hovind has failed to allege that she suffered from a "serious health condition." Second, BPC/BPHHS argues that Hovind failed to give adequate notice of her need for leave. Those contentions are dealt with separately below.

### A.     "Serious Health Condition"

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Eighth Circuit has interpreted the "continuing treatment" standard and the regulations implementing that standard to require the following three

elements: "(1) that [the employee] had a period of incapacity requiring absence from work, (2) that this period of incapacity exceeded three days, and (3) that [the employee] received continuing treatment by a health care provider within the period." *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001) (quotations omitted). "[T]he fact that an employee is sufficiently ill to see a physician two times in a period of just a few days is all that FMLA requires for 'continuing treatment.'" *Id.* at 1149 (quotation omitted).

Here, BPC/BPHHS contends that the facts alleged in Hovind's amended complaint fail to satisfy these requirements. BPC/BPHHS first argues that the FMLA's legislative history demonstrates that it was not intended to cover the type of illness suffered by Hovind. BPC/BPHHS specifically notes the following passage from the Senate Report on the bill:

> The term "serious health condition" is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days[.]

S. Rep. No. 103-3, at 28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 30. BPC/BPHHS also argues that several federal courts have determined that bronchitis is not a "serious health condition" for the purposes of the FMLA. *See, e.g.*, *Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216 (S.D. Iowa 1997); *Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114 (W.D. Va. 1996). In addition, BPC/BPHHS argues that even if bronchitis qualifies as a serious health condition under the FMLA, Hovind's medical

records demonstrates that her case, in particular, was not serious. Finally, BPC/BPHHS notes that Hovind's March 9 visit was related to an allergic reaction, rather than Hovind's bronchitis, and consequently fails to qualify as the second doctor visit.

Hovind responds that her allegations are sufficient to demonstrate a serious health condition for the purposes of Rule 12(b)(6). Hovind argues that there is no per se exclusion of bronchitis as a serious health condition. Hovind notes the following passage from a 1996 opinion letter from the Department of Labor:

> The [FMLA] regulations reflect the view that, **ordinarily**, conditions like the common cold and flu (etc.) would not routinely be expected to meet the regulatory tests, *not* that such conditions could not qualify under FMLA where the tests are, in fact, met in particular cases.

Op. FMLA-86 (Dec. 12, 1996), *quoted in Thorson v. Gemini*, 205 F.3d 370, 379 (8th Cir. 2000). Hovind argues that this illustrates that the FMLA calls for a case-by-case analysis of particular patients' illnesses, rather than a categorical inclusion or exclusion of specific conditions. Hovind adds that the cases cited by BPC/BPHHS where bronchitis was not characterized as a serious health condition all involved periods of illness that were shorter than hers. Finally, Hovind adds that it would be inappropriate to consider her medical records – or otherwise substantively evaluate the severity of her illness – in the context of a motion to dismiss.

As Hovind suggests, the Eighth Circuit has not treated the FMLA's "serious health condition" requirement as merely a question of the title of the employee's condition, with some conditions qualifying and others not. Rather, the Eighth Circuit has looked behind the mere title of an employee's condition, and analyzed it using the factors recited in

*Rankin*. *See, e.g.*, *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 472-73 (8th Cir. 2007) (explaining that whether depression qualified as a serious health condition would depend on individual circumstances). Consistent with this approach, the bronchitis decisions relied on by BPC/BPHHS all consider the specific details of the employee's condition and treatment. *See Beal*, 972 F. Supp. at 1225 (noting that employee was still able to meet family needs and never went in for a follow-up appointment); *Hott*, 922 F. Supp. at 1128 (noting that the certification form submitted by the patient had indicated that the employee was still able to perform the functions of her position); *Beaver v. RGIS Inventory Specialists, Inc.*, 144 Fed. Appx. 452, 456 (6th Cir. 2005) (unpublished) (noting that bronchitis is not covered by the FMLA, but basing this conclusion in part on a doctor's note indicating that the employee would only be gone for a "few days"); *Cabrera v. Enesco Corp.*, No. 97-5546, 1998 WL 325169, at *7 (N.D. Ill. June 8, 1998) (noting that the employee did not require continuing treatment and had only been off of work for a "few days"). Moreover, further underscoring this approach, all of these decisions were on motions for summary judgment, after the parties had had a chance to conduct discovery on the specific details of the employee's condition. In short, BPC/BPHHS has not demonstrated that bronchitis is insufficient to constitute a serious health condition as a matter of law. Accordingly, the fact that Hovind is relying on a bronchitis episode does not require dismissal under Rule 12(b)(6), and Hovind, like the patients in the cases cited above, is entitled to an opportunity to demonstrate the severity of her condition with evidence.

As to BPC/BPHHS's challenge to Hovind's condition based on her medical records, that contention is unavailable in the context of this motion. Hovind's medical records were not affixed to, quoted, or extensively discussed in Hovind's amended complaint, and therefore may not be considered in a Rule 12(b)(6) motion to dismiss. *Cf. Enervations, Inc.*, 380 F.3d at 1069 (permitting consideration of materials "necessarily embraced" by the complaint for the purposes of a Rule 12(b)(6) motion to dismiss). While these materials would be relevant if the Court were to convert this motion to one for summary judgment, *see* Fed R. Civ. P. 56(d), the Court finds that this would be inappropriate before the start of discovery.

In sum, the question raised by BPC/BPHHS's motion is merely whether Hovind's complaint has stated a claim that is "plausible on its face." *Twombly*, 127 S. Ct. at 1974. As to whether she suffered from a "serious health condition," Hovind has done so. Hovind has alleged that she was incapacitated and unable to work for fifteen days. If Hovind is ultimately able to prove those allegations, then she will satisfy the first two requirements recited in *Rankin*. 246 F.3d 1145, 1148 (requiring a period of incapacity exceeding three days). In addition, Hovind has alleged that she was seen by a physician twice in two days, for conditions arising out of her bronchitis and its treatment. While BPC/BPHHS argues that Hovind's second visit was triggered by a reaction to her bronchitis medication, rather than the bronchitis itself, neither BPC/BPHHS nor this Court has identified any case that excludes such a visit from the Court's continuing treatment analysis as a matter of law. *Cf. Rask*, 509 F.3d at 471 (quotations omitted) (noting that complaints concerning side effects may be insufficient for *notice* purposes, if

the employer was not otherwise aware of an underlying serious health condition). Moreover, a searching analysis of this visit based on Hovind's medical records would be inappropriate at this stage, for the reasons given above. Thus, the Court concludes that Hovind has also stated a sufficient allegation to meet the last requirement for a serious health condition. *See Rankin*, 246 F.3d at 1149. Accordingly, BPC/BPHHS's motion is denied to the extent that it challenges Hovind's allegation of a serious health condition.

### B. Adequate Notice

In situations where the need for FMLA leave unexpectedly arises, the employee is required to give the employer notice "as soon as practicable." 29 C.F.R. § 825.303(a). "Generally, this means no more than two days after learning of the need for the leave." *Carter*, 121 F.3d at 1148. The employee is not required to expressly indicate that the leave is being requested pursuant to the FMLA. 29 C.F.R. § 825.302(c). Rather, "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Rask*, 509 F.3d at 471 (quotations omitted). In cases involving a serious health condition, "an employee must provide information to the employer to suggest that his health condition could be serious," "so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Id*. at 472.

Here, BPC/BPHHS argues that the facts alleged by Hovind could not – as a matter of law – have put them on notice that Hovind was requesting leave for a "serious health condition." BPC/BPHHS relies primarily on *Rask*, 509 F.3d at 473, a case where the

employee merely told her employer that she would be absent for "help with my medication still, I'm still having a lot of side effects from what they put me on." Hovind responds that she told BPC/BPHHS she had a medical condition and would require 17 sick days – both by verbally informing Needham and by submitting this information on BPC/BPHHS's prescribed form – and that this afforded adequate notice under the FMLA.

The Court concludes that Hovind's allegation of a specific request for 17 sick days is sufficient to survive a Rule 12(b)(6) motion to dismiss. While the notice provided by Hovind would have been more clearly adequate if she had given more specific details about her condition, the length of her request was more than five times longer than the threshold for FMLA leave. *See Rankin*, 246 F.3d at 1148. This specific request for a lengthy absence distinguishes this case from *Rask* – as well as every other case cited in BPC/BPHHS's brief – and could plausibly have alerted BPC/BPHHS that this was not an ordinary sick-day request. Moreover, if BPC/BPHHS doubted the seriousness of Hovind's condition, it could have compelled her to provide a "certification" of that condition issued by her health care provider. *See* 29 U.S.C. § 2613(a). BPC/BPHHS did not do so.[3]

---

[3] Hovind also argues that because of this neglected opportunity, BPC/BPHHS should be equitably estopped from contesting her serious health condition. Because the Court has concluded that Hovind's FMLA allegations were adequately pled, it need not address this issue. However, the Court anticipates the parties revisiting this issue in any future motions for summary judgment. *See generally Thorson*, 205 F.3d at 381-82; *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000).

Finally, the Court notes that as with BPC/BPHHS's challenge to Hovind's health condition, all of the cases that BPC/BPHHS relies on addressed motions for summary judgment. In other words, those decisions came after the parties had had an opportunity to conduct discovery and present evidence on the specific circumstances in which the notice was given. While further discovery may well reveal that Hovind's disclosure was insufficient as a whole, BPC/BPHHS has pointed to no authority indicating that it was categorically inadequate, or that it would be appropriate to dismiss Hovind's claim before that discovery begins. Accordingly, BPC/BPHHS's motion is denied to the extent that it challenges the adequacy of Hovind's notice.

### III.  FMLA RETALIATION

The FMLA also prohibits employers from retaliating against an employee for asserting rights under the Act. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). Hovind argues that BPC/BPHHS did so here, by firing her for asserting her right to medical leave. BPC/BPHHS's only argument for dismissing this claim is that Hovind has failed to establish her entitlement to leave, for the reasons discussed above. Because the Court has rejected those arguments, BPC/BPHHS's motion to dismiss is denied to the extent it seeks the dismissal of Hovind's retaliation claim.

### IV.  BREACH OF CONTRACT

Hovind's final claim is for breach of contract. This claim is based on her allegation that BPC/BPHHS violated its rules for handling unexcused absences. BPC/BPHHS argues that this claim should be dismissed because those rules do not

constitute an enforceable contract.  Under Minnesota law, "where an employment contract is for an indefinite duration, such indefiniteness itself does not preclude handbook provisions on job security from being enforceable, whether they are proffered at the time of the original hiring or later, when the parties have agreed to be bound thereby."  *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983).  To establish the enforceability of such a provision, a party must show (1) a definite offer by the employer; (2) communication of the offer to the employee; (3) acceptance of the offer; and (4) consideration.  *Id*. at 626-27.  In considering whether a handbook constitutes a definite offer, Minnesota has looked to whether the handbook was a mere "general statement of policy" or whether it sets out "definite language . . . for procedures to be followed."  *Id.* at 630.  In addition, "[t]he employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer."  *Id*. at 627.

Here, Hovind's amended complaint alleges that BPC/BPHHS distributed its policy on unexcused absences to its employees, and that she continued working after signing an acknowledgment of this policy.  BPC/BPHHS argues that these allegations are insufficient because they "fail[] to fairly notify Bristol Place of the basis or grounds on which Plaintiff alleges the existence of a definite offer, communication, acceptance and consideration."  (Defendant's Memorandum of Law in Support of Motion to Dismiss, at 22.)  BPC/BPHHS relies solely on *Beal*, 972 F. Supp. at 1227, a case where the court found insufficient evidence of a handbook's offer or acceptance.  As Hovind points out,

however, *Beal* was decided on summary judgment, where the plaintiff was required to establish each element with sufficient evidence. Here, where Hovind is merely required to state a plausible claim, her allegations appear more than adequate. The document at issue, titled "Work Rules," states specific procedures to be followed in the case of illness and employee absence, *see Mettille*, 333 N.W.2d at 630 (finding sufficient evidence of an offer where a handbook contained definite language describing work disciplinary procedures); BPC/BPHHS allegedly delivered the rules to Hovind and required her to sign them; and Hovind continued working. While Hovind will ultimately be required to support these allegations with evidence, they are sufficient to set forth an enforceable contract under Minnesota law. Accordingly, the Court also denies BPC/BPHHS's motion to dismiss to the extent that it seeks the dismissal of Hovind's breach of contract claim.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 4] is **DENIED**.

DATED:  October 24, 2008　　　　　　　　　　　　_____s/ John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge